# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**ROCHE DIAGNOSTICS CORP., et al**                                                       **PLAINTIFF**

**V.**                                                                    **CIVIL ACTION NO. 3:20-mc-5-DAS**

**MITCHELL, MCNUTT & SAMS, PA**                                                  **RESPONDENT**

**V.**

**PRIORITY HEALTHCARE CORP., et al.**                                             **DEFENDANTS**

## ORDER

This matter is before the court on the motion of Priority Healthcare Corp., et al., (hereinafter Priority Healthcare defendants) to quash or modify the subpoena duces tecum served on Mitchell, McNutt & Sams, P.A., and the Plaintiffs' Cross-Motion to compel compliance with the subpoena. The motions have been fully briefed and the court has heard argument by the parties in a telephonic hearing on April 14, 2020. The court finds that the motion to quash or modify the subpoena duces tecum should be denied. Also, because the law firm withheld production only to allow the court to entertain the motion to quash and has assured the court it will timely respond in accordance with this order, the court finds the motion to compel is moot.

## FACTUAL BACKGROUND

The movants are defendants in Civil Action No. 2:18-cv-01479-KOB-HNJ, brought against them by Roche Diagnostics, Corp., and Roche Diabetes Care, Inc.,(hereinafter Roche) in the United States District Court in the Northern District of Alabama.[1] The subpoena was issued

---

[1] The movants are Konie Minga; Priority Healthcare Corporation d/b/a Priority Care; Priority Care Pharmacy, LLC; Priority Care Pharmacy Solutions Care Medical Supply, LLC; Amory Priority Care

from that court and served upon attorney Albert Delgadillo and the law firm of Mitchell, McNutt and Sams, P.A., who formerly represented these defendants.

In the underlying lawsuit Roche alleges that the Priority Healthcare defendants, through multiple individuals who owned and controlled multiple corporate defendants and pharmacies in Mississippi, Alabama and Arkansas, all engaged in a massive insurance fraud that caused Roche to suffer millions of dollars in losses and other damages. The court does not detail all of the plaintiffs' allegations against the defendants about how these frauds were allegedly organized and perpetrated but notes the allegations all relate to the sale of plaintiffs' diabetic testing strips and claims for insurance and other healthcare reimbursement for these strips. The intricacies of the alleged fraudulent scheme are detailed in the plaintiffs' amended complaint and in the November 20, 2018, order denying the motion to stay discovery and quash subpoenas, in the underlying action. (2:18-cv-1479-KOB-HNJ, Docket Entry 64).

The subpoena duces tecum seeks the following information:

1. All communications, transmittals, disclosures, applications, and/or submissions (including but not limited to letters, electronic mail, and faxes), from January 1, 2013 to the

---

Pharmacy, LLC; Priority Care Pharmacy Services, LLC;, LLC; Amory Discount Pharmacy, LLC; d Care Pharmacy 2, LLC; Jasper Express Care Pharmacy, LLC; Vincent Priority Care Pharmacy, LLC; d/b/a The Medicine Chest; Vincent Express Care Pharmacy, LLC; Vickers Priority Care Pharmacy, LLC; Carbon Hill Express Care Pharmacy, LLC; Bowie's Priority Care Pharmacy, LLC d/b/a Bowie's Discount Pharmacy; Bowie's Express Care Pharmacy, LLC; B&K Priority Care Pharmacy, LLC; B&K Express Care Pharmacy, LLC; Monroe Pharmacy Corporation; Tombigbee Pharmacy, LLC; Main Street Drugs, LLC; Medical Park Discount Pharmacy, LLC; Medical Park Pharmacy, Inc.; Burns Drugstore, Inc., Burns Discount Drug Store, LLC, aka Burns Discount Drug Store, Delaware; Burns Discount Drug Store, LLC a/k/a Burns Discount Drug, Arkansas; Ozark Family Pharmacy, LLC d/b/a Ozark Family Pharmacy, Arkansas; Ozark Family Pharmacy, LLC, Medpoint Advantage, LLC; Medpoint Pharmacy Benefit Managers, LLC d/b/a Medpoint Pharmacy; Professional Healthcare Staffing, LLC; Razorback Pharmacy Services, Inc.; Priority Express Care Pharmacy, LLC; Yellowhammer Pharmacy Services Corporation; Priority Care Professional Staffing, LLC; Medpoint, Inc.; and Medpoint, LLC. There are other defendants including multiple individuals who are defendants in the underlying action who are not movants in this miscellaneous action.

present, on behalf of or concerning Phillip Minga, Konie Minga, any other Defendant in this action, or any entity owned or controlled by Phillip or Konie Minga, with:

    a.    All federal or state government agencies, including but not limited to the Office of Inspector General of the U.S. Department of Health and Human Services, state boards of pharmacy, offices of state secretaries of state, and any contractor working on behalf of any federal or state government agency;

    b.    Pharmacy benefit managers;

    c.    Health insurance companies or insurers;

    d.    Suppliers of medical goods or pharmaceuticals; and

    e.    Banks and financial institutions.

2. Any statement(s), certifications (s), declaration(s), affidavit(s), attestations(s) or other assertions of inability to pay a penalty, forfeitures, and/or restitution executed, signed, and /or endorsed by Phillip A. Minga in connection with the investigation of Phillip Minga and Medpoint, LLC by the Health and Human Services Department Office of Inspector General and the resulting October 2016 Exclusion Agreement, and all documents or financial disclosure submitted prior to, in support of, or in connection therewith.

3. Transcripts of any interview or depositions conducted during or pursuant to the investigation of Phillip Minga and Medpoint, LLC by the Health and Human Services Department of Inspector General.

The defendants in the underlying action argue that the subpoenas are overly broad, seek irrelevant documents, are unduly burdensome and disproportionate to the needs of the case. The defendants propose that the subpoenas should be limited to documents referencing the plaintiffs

and their products.  The plaintiffs argue that the proposed limitation would result in exclusion of many relevant documents necessary to prove the allegations of the fraud; to demonstrate the control and involvement of individual defendants; and to prove their damages, including punitive damages.  They also challenge the movants' standing to mount any challenge to the subpoena duces tecum because it is directed to a third party.  The court addresses the question of standing first.

### 1.  Standing to Challenge the Subpoena

The parties disagree on whether the movants have standing to challenge the subpoenas to their former counsel.  Both agree there generally is no standing to challenge subpoenas to third parties under Rule 45, save as to matters of privilege or personal interest.  *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Coleman v. Swift Transport*, 2013 WL 12178160 (N.D. Miss 2013).  The Priority Medical defendants argue they have standing based on their personal interests in the documents in the possession of its former attorneys.  These documents were compiled and prepared during the course of legal representation and based on information from the clients.  Regardless, even after considering the arguments of the movants, the court finds the discovery warranted, and thus, the standing arguments are moot.

### 2.  Relevance

The Priority Healthcare defendants present a facially appealing argument that the subpoena issued to its attorneys is overly broad and will sweep in many documents that are irrelevant to the plaintiffs' claims.  They argue that since Roche cannot seek damages for any misconduct regarding other manufacturers, discovery must be limited to documents pertaining to Roche's products, and other documents excluded.  The court, however, is convinced that such a limitation would preclude discovery of documents relevant to proving the modus operandi of the defendants' operations; the

4

knowledge and control of various individuals in the fraud; and the pattern and persistence of the fraudulent conduct alleged. As plaintiffs' counsel pointed out in argument, Roche is not the only known victim of the fraudulent scheme that (according to the plaintiffs) Phillip Minga and his cohorts devised and executed. Other diabetic strip manufacturers products, including Abbott and Johnson and Johnson were also defrauded.

The plaintiffs seek documents related to investigations and audits by private insurer, pharmacy benefit managers and/or governmental agencies related to the general business practices and the fraudulent business practices of the Priority Healthcare defendants related to all diabetic test strips. They seek records of communication between its own attorneys and private and governmental entities looking at the defendants' activities. The reality is audits and investigations were triggered by extremely large numbers of purported prescriptions being filled at retail pharmacies in small towns.[2] The audits and investigations were not limited to, nor particularly concerned with which manufacturer's strips were being fraudulently adjudicated, but with the sum total of fraudulent adjudications. Because the audits and investigations were not specific to Roche products, the inquiries made by the subpoenas likewise cannot be limited to Roche specific communications.

The court finds that the subpoenas are not overly broad but are designed to seek information central to the development of proof to support the plaintiffs' claims made in their amended complaint. The document request casts a broad net, but the court is satisfied that the requests are

---

[2] Counsel provided one example of what conduct triggered audits and investigations. Rural retail pharmacies would go from processing a couple hundred total prescriptions to suddenly processing tens of thousands of claims for diabetic test strips, in numbers exceeding the population of their towns. When one pharmacy would be banned from participation, the prescriptions would be moved to another pharmacy, creating another massive surge in processed pharmacies. In some cases, the Healthcare defendants did not possess or maintain any brick and mortar pharmacy at all.

proportional to the needs of the litigation, given the complexity of the defendant's operations, the alleged persistence of the fraudulent operations and the millions of dollars at stake.

The court also finds that the subpoena is not unduly burdensome to the recipient law firm, which has not objected. Their counsel has represented that the bulk of the work needed to respond to the subpoena has already been done. The responsive documents have been identified and some of them have been Bates-stamped. Counsel represented that it anticipated it could produce documents within one week of the court's order.

**IT IS, THEREFORE, ORDERED,** as follows:

1. The motion to quash or modify the subpoena duces tecum is denied. The documents responsive to the subpoena duces tecum shall be produced to the plaintiff in this action as soon as they can be gathered.

2. Because Mitchell McNutt delayed its production of the documents to allow this court to adjudicate the defendants' motion to quash and have assured the court of compliance with its order, the court finds that there is no need to enter an order compelling the same, and therefore finds the cross-motion to compel is moot.

3. The plaintiffs have acknowledged that the documents produced pursuant to the subpoena duces tecum are subject to the protective order entered in the underlying action in the United States District Court for the Northern District of Alabama. (Docket Entry 31, 32). Those orders shall control the production of documents pursuant to the subpoenas by the law firm.

**SO ORDERED**, this the 16th day of April, 2020.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**

6